## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| **GEORGE A. BAILLIE,** | : | **Bankruptcy No. 05-36927 BM** |
| | : | |
| | : | |
| **Debtor** | : | **Chapter 7** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| **PENNSYLVANIA LAWYERS FUND** | : | |
| **FOR CLIENT SECURITY,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **Adversary No. 06-2208 BM** |
| | : | |
| **GEORGE A. BAILLIE,** | : | |
| | : | **Complaint To Determine Debt** |
| **Defendant** | : | **Nondischargeable** |

Appearances:    Thomas E. Reilly, Esq. for Plaintiff
George A. Baillie, *Pro Se*

### <u>MEMORANDUM OPINION</u>

Pennsylvania Lawyers Fund for Client Security (PLFCS) seeks a determination that four debts owed to it as the subrogee of some of debtor's clients are excepted from discharge by § 523(a)(4) of the Bankruptcy Code.

Debtor George Baillie has conceded that two of the debts totaling $19,300 are excepted from discharge. He denies, however, that two other debts totaling $67,500 are excepted from discharge by this provision.

We conclude that three of the four debts, which total $86,300, are not dischargeable. The remaining debt in the amount of $500 is dischargeable.

## – FACTS –

Debtor was licensed to practice law in Pennsylvania from 1984 until he resigned from the Pennsylvania Bar in December of 2003 and thereafter was disbarred by the Supreme Court of Pennsylvania.

Among his clients were: Joseph Wasik, Helen Zirwas, Deborah Florio and William Bogar, each of whom accused debtor of dishonest conduct.

PLFCS determined prior to debtor's bankruptcy filing that Zirwas and Wasik had suffered economic losses on account of debtor's dishonest conduct and reimbursed them $6,900 and $12,400, respectively, as compensation for their losses. The payments were made prior to the date on which debtor filed his bankruptcy petition. Upon receipt of payment by PLFCS, Zirwas and Wasik assigned their claims to PLFCS and stipulated that PLFCS was subrogated to the claims.

Florio and Bogar also submitted claims to PLFCS accusing debtor of dishonest conduct.[1] PLFCS did not determine until *after* debtor had filed his bankruptcy petition that they too had suffered economic losses as a result of dishonest conduct by debtor and paid them $67,000 and $500, respectively, as reimbursement for their losses. Upon receipt of payment from PLFCS, Florio and Bogar assigned their claims to PLFCS and stipulated that PLFCS was subrogated to the claims.

Debtor was Florio's attorney-in-fact pursuant to a power of attorney Florio executed in 1995. Debtor functioned as her attorney-in-fact until August of 2002, when

---

[1] Florio submitted her claim to PLFCS prior to the petition date while Bogar filed his claim after the petition date.

he resigned.  The document Florio executed conferred upon debtor the general power to perform all matters which might be proper with respect to Florio.  She also granted debtor the specific power to engage in financial transactions on her behalf.

Florio was admitted as a resident to Horizon Senior Care, a skilled nursing care facility, in March of 1997.  As her attorney-in-fact, debtor was supposed to pay the cost of Florio's care while she resided at Horizon Senior Care.

Barr Street Corporation (BSC), doing business as Horizon Senior Care, brought suit against Florio in state court seeking payment for her care while at Horizon Senior Care.  A consent judgment in the amount of $102,051 was entered in favor of BSC and against Florio on March 4, 2002.

When debtor failed to satisfy the judgment as Florio's attorney-in-fact, BSC filed a petition in May of 2002 in the court that had entered the consent judgment requesting a rule directing debtor to show cause why he should not be compelled to file an accounting of his handling of Florio's assets.  The petition was filed in aid of execution of the judgment entered in March of 2002.

A hearing on the petition of BSC was heard in state court on August 19, 2002. Debtor agreed at the hearing to resign as Florio's attorney-in-fact.  The court issued an order after the hearing which: (1) appointed an interim guardian for Florio; (2) directed debtor to file a full and complete accounting of his activities as Florio's attorney-in-fact; and (3) froze all of Florio's bank accounts until further order of court.

Debtor submitted an accounting of his activities as Florio's attorney-in-fact on September 13, 2002.

At some undisclosed time prior to April 14, 2003, BSC filed a complaint with the Disciplinary Board of the Supreme of Pennsylvania accusing debtor of professional misconduct while he was Florio's attorney-in-fact.

Debtor eventually relented and executed a document on December 23, 2003, wherein he voluntarily resigned from the Pennsylvania Bar pursuant to Rule 215 of the Pennsylvania Rules of Disciplinary Enforcement.  Among other things, debtor acknowledged that the material allegations upon which his alleged misconduct was predicated "are true".  He further acknowledged that he could not successfully defend himself against the charges based on his misconduct.  Debtor thereafter was disbarred from the practice of law by the Supreme Court of Pennsylvania.

Debtor filed a voluntary chapter 7 bankruptcy petition on October 3, 2003.  The schedules accompanying the petition disclosed assets with a total declared value of only $6,125.00 and liabilities totaling $248,707.01.

PLFCS was identified on the schedules as having an undisputed general unsecured claim in the amount of $19,300, the total amount it had paid to Zirwas and Wasik.  Florio and Bogar were identified as having undisputed general unsecured claims in the amounts of $102,051 and $500, respectively.  PLFCS was not listed as having a claim with respect to the claims of Florio and Bogar because it had not reimbursed them

- 4 -

prior to the petition date for the losses they had incurred as a result of debtor's dishonest conduct.

PLFCS commenced this adversary action against debtor on February 10, 2006, seeking a determination that the debts owed to Zirwas, Wasik, Florio and Bogar, to which it was subrogated, were excepted from discharge by §§ 523(a)(2), (a)(4), (a)(6) and (a)(7) of the Bankruptcy Code.

The matter was tried and is now ready for disposition. Debtor conceded at trial that the debts he owes to PLFCS as subrogee of Zirwas and Wasik are not dischargeable. We need not in light of this concession discuss the dischargeability of the debts arising from the claims Zirwas and Wasik submitted to PLFCS.

## DISCUSSION

Two disputed issues raised by PLFCS and debtor must be resolved before this matter can be decided on the merits.

Debtor asserts that in considering and deciding the claims of Florio and Bogar without obtaining prior relief from the automatic stay, the actions taken by PLFCS were in violation of the automatic stay and consequently are void *ab initio* – i.e., are a nullity.

PLFCS in turn asserts that debtor is collaterally estopped from denying the allegations whose truth he admitted in his resignation letter. Debtor, it should be recalled, admitted in his resignation letter that the material allegations against him "are true" and admitted that he could not successfully defend himself against the charges which were predicated on such misconduct.

We shall address these issues *seriatim* and then consider the merits of PLFCS'

complaint against debtor.

## – I –

### *Was The Automatic Stay Violated?*

Section 362 of the Bankruptcy Code provides in part as follows:

(a) Except as provided in subsection of this section, a petition filed under section 301 ... of this title ... operates as a stay, applicable to all entities, of ---
>  (1) The commencement or continuation ... of a judicial, administrative or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title ....

(b) The filing of a petition under section 301 ... of this title, ... does not operate as a stay ....
>  (4) under paragraph (1) ... of subsection (a) of this section ... of the commencement or continuation of an action or proceeding by a governmental unit ... to enforce such governmental unit's police or regulatory power ....

11 U.S.C. § 362(a).

The automatic stay set forth in subsection (a) is broad in scope and applies to

all proceedings against a debtor in bankruptcy. *Acands v. Travelers Casualty & Surety*

*Company*, 435 F.3d 252, 259 (3d Cir.), *cert. denied*, 126 S.Ct. 2291, 164 L.Ed.2d 833

(2006).  It does not, however, apply to actions brought *by* a debtor against a creditor.

*Id*.

Unless relief from the automatic stay is granted, the automatic stay remains in

effect until the bankruptcy case is closed or dismissed or, in a case brought by an

individual debtor under chapters 7, 9, 11 or 12 of the Bankruptcy Code, until a discharge is granted or denied. *11 U.S.C. § 362(c)(2)*.

The automatic stay applies to any judicial or administrative action taken against a debtor in bankruptcy that is material to a claim "against the debtor". *Constitution Bank v. Tubbs*, 68 F.3d 685, 692 (3d Cir. 1995). Any post-petition judicial or administrative action "against a debtor" is void *ab initio* – i.e., is a nullity. *Id.*, 68 F.3d at 692 n.6.

As support for his assertion that the actions taken by PLFCS with respect to the claims of Florio and Bogar were in violation of the automatic stay, debtor calls our attention to *Bergman v. Wintroub (In re Wintroub)*, 284 B.R. 680 (8th Cir. BAP 2002). In *Weintroub*, the Bankruptcy Appellate Panel denied a creditor's motion for reconsideration of an earlier decision in which it affirmed the bankruptcy court's denial of a motion for relief from stay to permit the creditor to proceed with a claim to the Client Security Fund of the Bar of Iowa while its objection to the dischargeability of the debt was pending in the bankruptcy court.

In denying the creditor's motion for reconsideration, the Bankruptcy Appellate Panel held that the creditor's claim with the Client Security Fund fell "squarely within the ambit of 11 U.S.C. § 362(a)(1)". The fact that the creditor sought recovery from the Client Security Fund rather than from debtor, the court reasoned, "does not change the nature of the claim nor does it remove the claim from the scope of the automatic stay". *Id.*, 284 B.R. at 681.

We respectfully disagree with the court's conclusion and will not apply it to this adversary action.

The *Weintroub* court evidently regarded the truth of its assertion as self-evident and provided no explanation of how it reached its conclusion in that case. After delving into the rules governing the actions of PLFCS in this case, we conclude that the claims submitted to PLFCS by Florio and Bogar were *not* "against the debtor" for purposes of § 362(a)(1) of the Bankruptcy Code.

PLFCS is a fund which exists in the Administrative Office of Pennsylvania Courts. It is funded by contributions from members of the Pennsylvania Bar to ameliorate losses incurred by clients and others which are the result of defalcation by any member of the Pennsylvania Bar acting as an attorney or fiduciary. *Pennsylvania Rule of Disciplinary Enforcement* 502(a).

The members of the Board of PLFCS are appointed by the Supreme Court of Pennsylvania. *Pennsylvania Rule of Disciplinary Enforcement* 503(a). Its powers and duties include investigating a claimant's application for reimbursement by PLFCS, authorizing disbursement from the Fund and fixing the amount thereof. *Pennsylvania Rule of Disciplinary Enforcement* 503(c). The Board of PLFCS may authorize a disbursement from the Fund in an amount not exceeding the reimbursable loss caused by a covered attorney's dishonest conduct. *Pennsylvania Rule of Disciplinary Enforcement* 511.

- 8 -

Dishonest conduct in this context consists of wrongful acts or omissions committed by a covered attorney in the manner of defalcation or embezzlement or the wrongful taking or conversion of money, property or other things of value. *Pennsylvania Rule of Disciplinary Enforcement* 513.

A reimbursable loss consists of money, property or other things of value that meet certain requirements. *Pennsylvania Rule of Disciplinary Enforcement* 514(a). The loss must be caused by dishonest conduct by a covered attorney while acting as an attorney at law or in a fiduciary capacity customary to the practice of law. *Pennsylvania Rule of Disciplinary Enforcement* 514(a)(1)(i) and (ii).

In addition to such conditions and requirements as the Board of PLFCS may impose, it must: (1) require a claimant, as a condition of payment, to enter into agreements subrogating and assigning its claim to PLFCS; and (2) require a claimant, as a condition of payment, to file a formal complaint with the Disciplinary Board of the Supreme Court of Pennsylvania and to fully cooperate with the Disciplinary Board or other authorities investigating a covered attorney's alleged misconduct. *Pennsylvania Rule of Disciplinary Enforcement* 521(e).

The claims Florio and Bogar submitted to PLFCS resulted in proceedings to determine whether *PLFCS* would reimburse them for the losses they incurred as a result of dishonest conduct on debtor's part. Exactly what sorts of proceedings took place is not clear from the record in this case. The issue whether *debtor* was liable to Florio and Bogar, however, was not at issue in those proceedings and was not decided.

The most compelling indication of this proposition is found in the requirement, set forth in *Pennsylvania Rule of Disciplinary Enforcement* 521(e), that Florio and Bogar execute agreements subrogating and assigning *their* claims to PLFCS as a condition of PLFCS' reimbursing them for their losses.

Under Pennsylvania law, subrogation is an equitable doctrine which involves *substituting* one entity to a claim, demand or right of another entity.  The substituted party succeeds to the rights of the other entity, including any remedies available to the other entity. *Public Service Mutual Insurance Company v. Kidder-Friedman*, 743 A.2d 485, 488 (Pa. Super. 1999).

Subrogation is a device for placing the ultimate burden of satisfying a debt upon the person or entity who in good conscience ought to pay it.  The doctrine applies when one pays out of its own funds a debt or obligation that is primarily payable from the funds of another. *Universal Underwriters Insurance Company v. Kacin, Inc.*, 916 A.2d 686, 692 (Pa. Super. 2007).

A subrogee's rights rise no higher than do the the rights of its subrogor.  As the subrogee of Florio and Bogar, PLFCS is subject to any defenses debtor may have against Florio and Bogar. *Public Service Insurance Company v. Kidder-Friedman,* 743 A.2d 483, 488 (Pa. Super. 1999).

Applying the above law to the facts of this case, we conclude that any proceedings which took place concerning the claims submitted by Florio and Bogar were *not* "against the debtor" for purposes of § 362(a)(1).  The purpose of such proceedings

was to determine whether *PLFCS* would reimburse them for their losses, not whether *debtor* was liable for those losses.  As the  subrogee of Florio and Bogar, PLFCS was at risk that their claims against debtor had no merit.

Our analysis of debtor's contention that the automatic stay was violated does not end there.  Our conclusion would be the same if the proceedings before PLFCS were "against the debtor" for purposes of § 362(a)(1).  The proceedings would fall squarely within the exception to § 362(a)(1) found at § 362(b)(4).

Congress was aware when it enacted § 362(a) that its various subparts were susceptible to abuse by debtors who sought a safe haven to prevent a governmental unit from exercising necessary governmental functions.  Congress enacted § 362(b) of the Bankruptcy Code to prevent this potential abuse. *U.S.A v. Nicolet, Inc.,* 857 F.2d 202, 207 (3d Cir. 1988).  It intended for the exercise of police or regulatory governmental powers to trump a debtor's right to a "cease fire" as well as the right of a debtor's creditors to an orderly administration of the bankruptcy estate. *Id.*

The automatic stay as set forth at § 362(a)(1) is not operative when a governmental entity exercises its police or regulatory powers to prevent or stop a debtor in bankruptcy from violating fraud, environmental protection, consumer protection, or public safety laws.  It also does not apply when a governmental unit seeks to fix damages for a debtor's violation of such laws. *Penn Terra Limited v. Department of Environmental Resources, Commonwealth of Pennsylvania*, 733 F.2d 267, 272 (3d Cir. 1984).

The exception to the automatic stay found at § 362(b)(4) should be broadly construed.  "Unnatural actions" to limit its scope should not be undertaken. *Id.*, 733 F.2d at 273.  A governmental unit's police or regulatory power "embodies the main bulwark of protection by which it carries out its responsibilities to the People".  Its abrogation should not be undertaken lightly. *Id.*

It is well-settled law that subsection 362(b)(4) applies to disciplinary proceedings brought by a State against an attorney. *Wade v. State Bar of Arizona*, 948 F.2d 1122, 1123-24 (9th Cir. 1991).  We conclude that the same is true of the disciplinary proceedings brought against debtor in this case by the Disciplinary Board of the Supreme Court of Pennsylvania.

It is beyond cavil that the Supreme Court of Pennsylvania is an instrumentality of the Commonwealth of Pennsylvania and qualifies as a governmental unit for purposes of § 362(b)(4).

The general purpose of the Pennsylvania Rules of Disciplinary Enforcement, which the Supreme Court of Pennsylvania promulgated, is to *protect the public*, the legal profession and the courts of Pennsylvania. *Office of Disciplinary Enforcement v. Holston*, 533 Pa. 78, 83, 619 A.2d 1054, 1055 (1993).  As a creation of the Supreme Court of Pennsylvania., the Disciplinary Board has the power and the duty to investigate the conduct of an attorney who is subject to the Pennsylvania Rules of Disciplinary Enforcement.  It may initiate such an investigation *sua sponte* or upon a complaint by any person. *Pennsylvania Rule of Disciplinary Enforcement 205(c)(1).*

It follows from this that, as is the case with the Supreme Court of Pennsylvania, the Disciplinary Board of the Supreme Court of Pennsylvania is a governmental unit of the Commonwealth of Pennsylvania.  It exercises a police or regulatory powers of a state when it acts in accordance with the Pennsylvania Rules of Disciplinary Enforcement.

The same is also true of the actions taken by PLFCS with respect to  the claims Florio and Bogar filed with it.  The actions it took with regard to the these claims also lie within the scope of § 362(b)(4).

The Disciplinary Board and PLFCS operate in tandem.  The Disciplinary Board investigates acts or omissions by an attorney that may violate the Pennsylvania Rules of Disciplinary Enforcement and determines whether sanctions against the attorney are warranted. *Pennsylvania Rule of Disciplinary Enforcement* 203(a).

PLFCS considers applications for reimbursement and fixes the amount thereof if it determines that reimbursement is warranted. *Pennsylvania Rules of Disciplinary Enforcement* 503(c)(2) and (c)(3).  The Disciplinary Board must fully cooperate with PLFCS.  Upon request by PLFCS, the Disciplinary Board must make available to PLFCS all reports of investigations conducted with respect to an attorney whose alleged misconduct caused a claimant's reimbursable loss. *Pennsylvania Rules of Disciplinary Enforcement 521(a).*

There are two tests for determining whether § 362(b)(4) applies and hence excepts a particular governmental action from the automatic stay as set forth at § 362

(a)(1).   They are the pecuniary test and the public policy test.  *N.R.L.B. v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 942 (6th Cir. 1986).

The pecuniary interest test inquires whether the governmental action at issue relates principally to the protection of the government's pecuniary interest in debtor's property.   The public policy test inquires whether the governmental action is in furtherance of its policy interest in protecting the safety and welfare of the public.  *U.S.A. v. Nicollet*, 857 F.2d 202, 209 (3d Cir. 1988).  Subsection 362(b)(4) applies only to governmental actions that satisfy the second test. *University Medical Center v. Sullivan (In re University Medical Center)*, 973 F.2d 1065, 1075 n.11 (3d Cir. 1992).

Our previous analysis of whether the actions undertaken by PLFCS after the petition date violated § 362(b)(1) leads to conclude that even if those actions lie within the scope of § 362(a), they also lie within the scope of § 362(b)(4).   Subsection 362(a)(1), in other words, is rendered inoperative.

Actions PLFCS took after the petition date were not in furtherance of any pecuniary interest it had in debtor's property. Nothing PLFCS did amounted to a determination that debtor was liable to it as a consequence of its having reimbursed Florio and Bogar for their losses.  As the subrogee of Florio and Bogar, PLFCS remains subject to any defenses debtor might have had against the claims of Florio and Bogar for reimbursement.  In taking the actions that it did, PLFCS also sought to further the public policy of reimbursing persons who suffered economic losses caused by an attorney's misconduct.

It follows from the above considerations that the actions of PLFCS with respect to the claims of Florio and Bogar were not in violation of the automatic stay and therefore are not void *ab initio.*[2]

**– II –**

### *Does Collateral Estoppel Apply?*

PLFCS maintains that because debtor admitted in his resignation letter that the allegations by Florio and Bogar accusing him of professional conduct "are true", the doctrine of issue preclusion prevents him from litigating certain issues in this adversary action that the Disciplinary Board previously had decided.

Issue preclusion, also known as collateral estoppel, applies to  proceedings in a bankruptcy court to determine whether a particular debt is dischargeable. *Grogan v. Garner*, 498 U.S. 279, 285 n.11, 112 S.Ct. 654, 658 n.11, 112 L.Ed.2d 755 (1991).

A federal court must accord judicial proceedings brought in a state tribunal the "same full faith and credit ... as they have by law or usage in the courts of such State". *28 U.S.C. § 1738.*   Federal courts are required to defer to the law of preclusion of the state in which a judgment was rendered and must apply the rules of issue preclusion that apply in that state.  *Marese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 1331-32, 84 L.Ed.2d 274 (1985).  A state-court judgment must be given the *same* preclusive effect as it has under the law of the state in which

---

[2] Even if the actions taken were in violation of the automatic stay, they were voidable rather than void *ab initio*. Had Florio and Bogar or PLFCS requested relief from stay pursuant to § 362 (d)(1) of the Bankruptcy Code, it is likely that the request would have been granted.

it was entered. *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984).

The doctrine of issue preclusion applies under Pennsylvania law if: (1) the issue decided in a prior case is identical to the issue presented in a later case; (2) there was a final judgment on the merits in the prior case; (3) the party against whom the doctrine is asserted was a party to or is in privity with a party to the prior case; (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior case. *Rue v. K-Mart Corporation*, 552 Pa. 13, 17, 713 A.2d 82, 84 (1998).

The party invoking the doctrine of issue preclusion has the burden of proving that it applies to the case at hand. *Gateway Center, Inc. v. Essex Insurance Company*, 475 F.3d 139, 147 (3d Cir. 2007).

PLFCS has failed to establish that all of the above requirements of issue preclusion are satisfied in this case. In particular, it has failed to establish that a judgment of any kind, let alone a final judgment on the merits, was entered in the above proceedings before the Disciplinary Board.

Under the law of Pennsylvania, a judgment is "nothing more than the official entry of a verdict or decision of a trial judge on the docket". *Sands v. Andeno*, 404 Pa. Super. 238, 245, 590 A.2d 761, 764 (1991); also *Dombrowski v. Cherkassky*, 456 Pa. Super. 801, 804, 691 A.2d 976, 977  (1997).

PLFCS presented no evidence showing that the Disciplinary Board rendered a *decision* against debtor and that it was entered into an official public record of such proceedings.  All we know from the evidence presented in this case is that after debtor submitted his letter of resignation in which he admitted to the truth of certain material allegations, the Disciplinary Board referred the matter to the Supreme Court of Pennsylvania, which thereafter disbarred debtor.  There is no basis for concluding from the evidence presented at trial that any "judgment" for purposes of issue preclusion was entered in the matter before the Disciplinary Board.

Because issue preclusion does *not* apply to this case, in order to prevail in this case PLFCS must produce evidence at trial which establishes that debtor committed the misconduct of which he was accused by Florio and Bogar.  In addition, debtor is not precluded from denying any of the material issues that the Disciplinary Board may have decided.

## – III –

### *Does § 523(a)(4) Apply?*

PLFCS maintains that the debts owed to it as the subrogee of Florio and Bogar are excepted from discharge by § 523(a)(4), which provides in part as follows:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt --- ....
> > (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

11 U.S.C. § 523(a)(4).

As we understand its position, PLFCS maintains that debtor defalcated while acting in a fiduciary capacity *vis-à-vis* Florio and Bogar. It does not maintain that debtor committed fraud while acting in such a fiduciary capacity or that he committed embezzlement or larceny.

The exceptions to the discharge of a debt found at § 523(a) generally should be construed strictly in favor of a debtor in bankruptcy and against a creditor claiming that a debt owed to it is not dischargeable. *Boston University v. Mehta (In re Mehta)*, 310 F.3d 308, 311 (3d Cir. 2002).

To find that a debt owed to it is not dischargeable pursuant to § 523(a)(4) on account of defalcation, the creditor must prove that: (1) there was a pre-existing fiduciary relationship between debtor and the creditor; (2) debtor acted in violation of that relationship; and (3) the creditor suffered an economic loss as a consequence. *Commonwealth Land Title Company v. Blaszak (In re Blaszak)*, 397 F.3d 386, 390 (6th Cir. 2005).

The creditor has the burden of proving, by a preponderance of the evidence, that these requirements are satisfied. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).

Federal rather than state law governs when determining whether debtor acted in a fiduciary capacity for purposes of § 523(a)(4). For a fiduciary relationship to exist in this context, the court must find that the money or property at issue was *entrusted* to the debtor. An express or technical trust must exist. *Blaszak*, 397 F.3d at 391. While

it is not dispositive, state law is relevant to this issue. *Fowler Brothers v. Young (In re Young)*, 91 F.3d 1367, 1371 (10th Cir. 1996)

The required trust must have existed prior to a debtor's misconduct. A constructive trust or a trust *ex maleficio* will not suffice for purposes of § 523(a)(4). *Texas Lottery Commission v. Tran (Matter of Tran)*, 151 F.3d 339, 342 (5th Cir. 1998).

Defalcation occurs for purposes of § 523(a)(4) when a fiduciary misappropriates or fails to account for money or other property held in trust for another. *Lewis v. Scott (In re Lewis)* 97 F.3d 1182, 1186 (9th Cir. 1996). Even an "innocent" default by a fiduciary who fails to fully account for money received qualifies as defalcation in this context. *Id*.

### The Debt Owed To Florio.

Florio granted debtor a general power of attorney in the document she executed in 1995. In so doing, she created a fiduciary relationship between herself and debtor. Under Pennsylvania law, an agent acting pursuant to a power of attorney has a fiduciary relationship with the principal. 20 Pa. C.S.A. § 5601(e).

Without something more, however, this does not establish that debtor acted as a fiduciary with respect to Florio for purposes of § 523(a)(4). Florio also must have *entrusted* the money or property at issue here to debtor. *In re Blaszak*, 397 F.3d at 391.

This additional requirement is present in this case. Included among the powers Florio granted to debtor in the power of attorney she executed was the specific power to engage in bank transactions on her behalf. By so doing, she entrusted debtor with

- 19 -

the funds in her bank accounts.   It follows that debtor *acted as a fiduciary vis-à-vis* Florio with respect to the funds in her bank account she entrusted to him.   The first of the above requirements of § 523(a)(4), in other words, is satisfied.

The second requirement also is satisfied.  PLFCS established at trial that debtor disbursed at least $68,000 from these bank accounts to himself.  Debtor did not deny that he disbursed these funds to himself.  Absent extenuating (and exculpatory) circumstances, we conclude that debtor *misappropriated* the funds by disbursing them to himself and that he therefore defalcated for purposes of § 523(a)(4) while acting in a fiduciary capacity.

Debtor attempted to block this inference by producing evidence at trial which was intended to establish that he had not misappropriated these funds and consequently had not defalcated within the meaning of § 523(a)(4) when he disbursed the funds to himself.  Debtor testified, *without corroborating documentary evidence*, that he made these disbursements to himself to repay previous loans he had made to debtor.  After observing debtor at trial, we conclude that debtor's testimony was not credible and was an obvious fabrication.

The third of the above requirements also is satisfied with respect to Florio. PLFCS suffered an economic loss as a result of debtor's defalcation when it reimbursed Florio in the amount of $67,000 for the losses she suffered on account of debtor's misconduct.

Because all of the above requirements of § 523(a)(4) have been satisfied, we conclude that the debt owed to PLFCS as Florio's subrogee is not dischargeable.

### The Debt Owed To Bogar

Little is known about what transpired while debtor was Bogar's attorney.

All that is known is that in 1995, Bogar paid debtor a retainer fee in the amount of $500 for debtor to represent Bogar and his wife in a dispute with their neighbor. A copy of the retainer agreement was not produced at trial.

Bogar and debtor agreed that if Bogar prevailed in the dispute, debtor would return the retainer fee to Bogar. It is not clear whether this was set forth in the retainer agreement or elsewhere.

The Bogars and their neighbor eventually settled their dispute in 1996. Debtor later on informed Bogar in 1998 that Bogar's neighbor had paid in full the costs Bogar had incurred in bringing suit against the neighbor. Bogar approached debtor numerous times beginning in 1998 and inquired when he could expect debtor to return the retainer fee. Debtor told Bogar on each occasion that he would return the retainer fee, but never did so. Finally, debtor told Bogar in the latter part of 2004 that he did not have the money to do so and that he had filed a bankruptcy petition. Bogar submitted a claim to PLFCS on November 23, 2005, requesting reimbursement of his losses.

The second of the above requirements of § 523(a)(4) is *not* satisfied in this instance.

As Bogar's attorney, debtor unquestionably owed a fiduciary duty to Bogar.   At common law, an attorney owes a fiduciary duty to his or her client. *Maritrans GP, Inc. v. Pepper, Hamilton &* Scheetz, 529 Pa. 241, 253, 601 A.2d 1277, 1283 (1992).   Breach of such duty is actionable. *Id.*

Although debtor unquestionably owed a fiduciary duty to Bogar as Bogar's attorney, PLFCS has *not* shown that debtor was acting *in a fiduciary capacity* with respect to Bogar when he failed (or refused) to return the above retainer fee to Bogar.

The retainer fee was partial *payment* for debtor's legal services on behalf of Bogar and was *not entrusted* to debtor by Bogar, in the manner required by § 523 (a)(4).   Bogar paid the fee to debtor to secure debtor's services.

Debtor's obligation to return the retainer fee was the result of an agreement they had concerning what would be done with the retainer fee if certain conditions were satisfied.   By failing (or refusing) to return the retainer fee upon satisfaction of those conditions, debtor breached a *contractual* obligation he owed to Bogar, not a *fiduciary* obligation.   Debtor's breach of this obligation, in other words, did not rise to the level of a breach of a fiduciary duty he owed to Bogar.

There is no need to consider whether the other requirements of § 523(a)(4) have been satisfied in light of the determination that the second requirement has not been satisfied with respect to Bogar.   The debt owed to PLFCS as Bogar's subrogee therefore is not excepted from discharge.

In summation, we conclude that the debts owed by debtor to PLFCS as the subrogee of Zirwas ($6,900), Wasik ($12,400) and Florio ($67,000), respectively, are not discharge able.  These debts total $86,300.  The debt owed to PLFCS as Bogar's subrogee in the amount of $500, however, is dischargeable.

An appropriate order shall issue.

**/s/**
_____
**BERNARD MARKOVITZ**
U.S. Bankruptcy Judge

Date: **April 24, 2007**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

IN RE:

| | | |
|---|---|---|
| **GEORGE A. BAILLIE,** | : | **Bankruptcy No. 05-36927 BM** |
| | : | |
| **Debtor** | : | **Chapter 7** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| **PENNSYLVANIA LAWYERS FUND** | : | |
| **FOR CLIENT SECURITY,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **Adversary No. 06-2208 BM** |
| | : | |
| **GEORGE A. BAILLIE,** | : | |
| | : | **Complaint To Determine Debt** |
| **Defendant** | : | **Nondischargeable** |

**<u>ORDER OF COURT</u>**

**AND NOW**, this **<u>24th</u>** day of **<u>April</u>**, 2007, for reasons set forth in the accompanying memorandum opinion, it hereby is **ORDERED, ADJUDGED and DECREED** that the debt in the amount of $86,300 owed by debtor George A. Baillie to Pennsylvania Lawyers Fund for Client Security as subrogee of Joseph Zirwas, Helen Wasik and Deborah Florio be and hereby is **NOT DISCHARGE ABLE**.

The debt in the amount of $500 owed by debtor to Pennsylvania Lawyers Fund for Client Security Fund as subrogee of William Bogar be and hereby is **DISCHARGEABLE**,

It is **SO ORDERED**.

_____**/s/**_____
**BERNARD MARKOVITZ**
U.S. Bankruptcy Judge

cm: Parties in interest